UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

TIMOTHY D. ROUSE, JR.                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 5:10CV-P116-R

JAY JONES *et al.*                                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on initial review of Plaintiff Timothy D. Rouse, Jr.'s, complaint (DN 1), first supplemental complaint (DN 7),[1] and amended complaint (DN 25) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the retaliation claim against Defendant Jay Jones will proceed beyond initial review and all other claims will be dismissed.

## I. SUMMARY OF CLAIMS

**A.   Original complaint (DN 1)**

Plaintiff, a convicted inmate currently incarcerated in the Kentucky State Penitentiary ("KSP"), filed a *pro se* complaint against KSP Defendants Jay Jones, captain and adjustment officer; and Tamie Darnell, sergeant and adjustment committee member.[2] He sues Defendants in their individual and official capacities.

Plaintiff reports that on March 30, 2010, he received a Category 3-9 (failure to pass bed inspection) charge because he was found to have over the allowed amount of property in his cell.

---

[1] The second supplemental complaint (DN 22) is not before the Court for consideration, as the Court, by Order entered March 25, 2011 (DN 26), granted Plaintiff's request to voluntarily dismiss all claims against all Defendants in that supplemental pleading.

[2] Plaintiff also named KSP Warden Philip Parker as a Defendant. Recently, however, by Order entered March 25, 2011, the Court granted Plaintiff's motion to voluntarily dismiss all claims against Defendant Parker with prejudice (DN 26).

He advises that he did not request any witnesses because he knew the report would be dismissed. During the disciplinary hearing on April 5, 2010, however, Defendants amended the charge to a Category 1-10 (failure to abide) charge, found him guilty, and sentenced him to 45 days of disciplinary segregation by revoking his suspended sentence issued on November 25, 2009. Plaintiff argues that his due process rights were violated due to Defendants' failure to grant a 24-hour continuance in light of the amended charge to prepare a defense and obtain evidence and witnesses. Plaintiff appealed the disciplinary decision to the warden, who on April 30, 2010, reversed the sentence but gave Plaintiff, as an amended penalty, a 60-day restriction on his mini-gym privileges.

Plaintiff additionally claims that the unlawful sentence originally imposed by Defendants Jones and Darnell affected the length of time Plaintiff must serve in administrative control unit ("ACU") status. Plaintiff reports that on April 26, 2010, four days prior to the warden's reversal of his sentence, Plaintiff went before the classification committee for a determination of whether he should be released from ACU status. He claims that the classification committee refused to release him from ACU status because he was serving a disciplinary sentence. As a result, Plaintiff claims that he "suffered (120) days of segregation," which prevented him from participating in education training and earning pay like the general population inmates.

An attached "Administrative Control Hearing Report Form" from the April 26, 2010, classification committee hearing indicates that Plaintiff was placed in ACU on December 8, 2008, "due to his successful escape and several escape attempts while incarcerated," and that Plaintiff was before the classification committee for a "90 Day ACU Review (6th cycle)." As additionally indicated on the Report Form, the classification committee recommended that

2

Plaintiff remain in ACU based on his current status in ACU disciplinary segregation and because he did not have six months of clear conduct as his last disciplinary report was issued on November 25, 2009. On the Report Form, Plaintiff's disciplinary segregation "out date" was listed as July 13, 2010.

As relief, Plaintiff seeks monetary damages, immunity from administrative control unit (ACU) status, and for Defendants to buy Plaintiff "accessories including a T.V. C.D. player, personel cloths, and shoes, . . . and allow Plaintiff [] to order $60.00 dollars worth of free canteen for (120) days when wanted."

**B.    Supplemental complaint (DN 7)**

In the supplemental complaint, Plaintiff again lists Jones and Darnell as Defendants and adds KSP Lieutenant Robert Parkers as a Defendant, in both his individual and official capacities. Plaintiff reports that on June 3, 2008, he received a category six (escape) charge. Plaintiff reports that he did not request witnesses but was denied the right to examine physical evidence before his disciplinary hearing. He states that following the disciplinary hearing on July 8, 2009, and over his objection, Defendants' moved to amend the charge to a new charge of forging documents to facilitate early release and refused to give Plaintiff a 24-hour continuance to prepare for the new charge. Defendants convicted Plaintiff of the amended charge and sentenced him to 90 days in segregation, to indefinite ACU placement, and to 180 days loss of non-restorable good-time credit. Plaintiff claims that as a result of his ACU placement, he was unable to receive educational credits, work for pay, or participate in group religious services. He claims that this disciplinary conviction and sentence were "called into question by federal writ of habeas corpus." As relief, Plaintiff seeks damages for his unlawful sentence, conviction and

segregation; damages for due process and corrections' policy violations; release from current and future ACU placement; and for Defendants to buy him a T.V.

C.      **Amended complaint (DN 25)**

Lastly, in his recently amended complaint, Plaintiff sues Defendants Jones, Darnell, and Parkers.[3] In the caption, he additionally lists Stacie Belt but fails to mention her elsewhere in the complaint.

Plaintiff challenges a disciplinary hearing on June 9, 2008, on due process grounds, where Defendants Parkers and Darnell amended the original charge of escape, Category 6-2, to a charge of forging documents. The disciplinary committee found Plaintiff guilty and sentenced him to 90 days of segregation, placement in ACU, and loss of 180 days of good-time credit. He claims that this matter was called into question pursuant to a writ of habeas corpus in 5:10CV-119-R.

Plaintiff additionally claims that Defendants Jones and Darnell unlawfully sentenced him to 45 days of segregation during his disciplinary hearing on April 5, 2010, in violation of Correctional Policy and Procedure. This is the same claim Plaintiff asserted in the original complaint.

Finally, Plaintiff asserts a retaliation claim against Defendant Jones. He alleges that on February 18, 2011, he received a Category 3-21 (lying to staff) charge. Plaintiff claims that on February 23, 2011, Defendant Jones convicted him in retaliation for filing a lawsuit against him in the past. During the hearing, claims Plaintiff, when he requested to call his witnesses,

---

[3]In the amended complaint, Plaintiff identifies "Robert Parkers" as "Robert Parker." For consistency, the Court will continue to identify this Defendant as "Robert Parkers."

"Defendant Jones stated 'I'm denying your request for witnesses, because I choose to believe internal affairs over you because Im still mad about the time you filed that lawsuit against me so Imma find you guilty.'" Plaintiff reports that Defendant Jones then sentenced him to 15 days in segregation.

As relief, he seeks damages and "injunctive relief by granting Plaintiff immunity from being tried by these Defendants in any future discplinary proceedings."

## II. **LEGAL STANDARD**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2)

take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

**A.    Due process**

Plaintiff claims that his due process rights were violated during each disciplinary proceeding.

In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court significantly restricted prisoners' § 1983 claims for relief based on issues concerning due process. The Court made a marked departure from its earlier decisions concerning recognized liberty interests, and instead limited due process liberty interests created by prison regulations "to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the

6

sentence imposed by a court of law." *Id.* at 485. The *Sandin* Court found no liberty interest in the inmate's 30-day placement in disciplinary segregation.

More recently, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possess a liberty interest in avoiding assignment to Ohio State Penitentiary ("OSP"), the state's only Supermax facility,[4] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson*, 545 U.S. at 223-24. Thus, "[i]n deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and *Austin* considered the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008).

Plaintiff does not allege facts close to those conditions found in Ohio's Supermax facility, and he does not allege that his placement in disciplinary segregation/ACU affected the duration of his sentence. *See Sandin*, 515 U.S. at 487 ("Nor does Conner's situation present a

---

[4]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson*, 545 U.S. at 213.

7

case where the State's action will inevitably affect the duration of his sentence."). Although he claims on one occasion that his placement in ACU was indefinite, an attachment to the complaint indicates that Plaintiff's classification in ACU is reviewed every 90 days. As to his claims that while in ACU he was not able to earn education credits or work for pay, "[p]risoners . . . have no federally cognizable liberty interest in participating in vocational, rehabilitation, and educational programs while incarcerated." *Hines v. Ford*, No. 1:10 CV 846, 2010 WL 3069559, at *2 (N.D. Ohio Aug. 2, 2010) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Bullock v. McGinnis*, 5 F. App'x 340 (6th Cir. Feb. 14, 2001) (prisoners have no constitutional right to rehabilitation, education, or jobs); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Molina v. Wilkinson*, No. 96-3127, 1996 WL 678226, at *2 (6th Cir. Nov. 21, 1996) (prisoner has no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) (no constitutional right to vocational or educational programs)). Plaintiff additionally indicates that he was not permitted to participate in group religious services. He does not, however, allege that he was denied a right to practice his religion in other respects. Plaintiff shows neither a due process nor free exercise claim, given his broad allegation in this regard.

The Court, therefore, finds that Plaintiff has failed to allege circumstances that were an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 485 (stating that while prisoners do not shed all constitutional rights at the prison gate, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system") (citations omitted)); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (finding that loss of

privileges and placement in segregation does not give rise to a protected liberty interest). As such, Plaintiff has failed to demonstrate the deprivation of a protected liberty interest that would entitle him to the procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Consequently, Plaintiff's claims that his placement in segregation violated due process must be dismissed.

While Plaintiff's placement in segregation did not constitute a liberty interest, a restraint which "inevitably affect[s] the duration of [an inmate's] sentence" does create a liberty interest. *Sandin*, 515 U.S. at 487. The loss of good-time credits affects the length of Plaintiff's prison sentence; thus he has a protected liberty interest in this regard. *Id.* at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Even though Plaintiff has demonstrated a liberty interest entitled to due process protection, there is still a barrier to his Fourteenth Amendment claim. A state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling in his favor would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). While not all claims challenging a prisoner's conviction or sentence will necessarily demonstrate the invalidity of the judgment, *id.* at 487 n.7, if a judgment in favor of a plaintiff would necessarily render his continued confinement invalid, the claim must be dismissed, not for lack of exhaustion of state remedies, but because it is simply not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 487.

In *Edwards v. Balisok,* 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison administrative proceedings. If the inmate's allegations would "necessarily imply the invalidity of the punishment imposed" the claim is not cognizable in a civil action under § 1983. *Id.* at 648.

More recently in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

Were the Court to find in favor of Plaintiff and conclude that Defendants violated his due process rights by engaging in the conduct summarized earlier in this Memorandum Opinion, such a finding would necessarily demonstrate the invalidity of Plaintiff's disciplinary actions and duration of his confinement since the ultimate result would be return of his lost good-time credits. Plaintiff's sole remedy for return of good-time credits is a writ of habeas corpus.

Plaintiff claims that the June 2008 disciplinary proceedings have been called into question pursuant to a writ of habeas corpus, and he cites to 5:10CV-P119-R (*Rouse v. Parker*). This is not correct. In fact, by Order entered March 23, 2011, the Court in the habeas action adopted the magistrate judge's report and recommendation in full and denied Plaintiff's § 2254 petition and supplemental petition.

Because Plaintiff's disciplinary proceeding resulting in the loss of good-time credits have not been overturned or otherwise invalidated, the due process claim must be dismissed in this respect for failure to state a cognizable claim upon which relief may be granted.

### B. Retaliation claim

Plaintiff alleges that in February 2011, Defendant Jones found him guilty of a disciplinary charge and sentenced him to 15 days in segregation in retaliation for filing a lawsuit against him in the past. **The Court will allow this claim to proceed against Defendant Jones in his individual capacity for damages.**

The official-capacity claim for damages must be dismissed as barred by the Eleventh Amendment, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."), and because a state officer sued in his official capacity for damages is not a "person" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The request for injunctive relief in the form of "immunity from being tried by these Defendants in any future discplinary proceedings," must be dismissed as too broad and speculative.

### C. Defendant Stacie Belt

While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing a defendant with "fair notice of the basis of [his] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). To state a claim for relief, a plaintiff must show how each defendant is accountable because the defendant was personally involved in the acts about which the plaintiff complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). "It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (dismissing a complaint brought

under § 1983). A complaint must contain "'either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). This means that the plaintiff must "allege 'with particularity' all material facts to be relied upon when asserting that a governmental official has violated a constitutional right." *Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834 (6th Cir. 2002).

In the instant case, Plaintiff lists Defendant Belt only in the caption of the amended complaint. Defendant Belt is not listed as a Defendant in the parties section of the complaint or anywhere in the body of the complaint. Plaintiff wholly fails to identify her position and place of employment or make any claims against her. The claims against Defendant Belt must, therefore, be dismissed for failure to state a claim upon which relief may be granted.

## IV. **CONCLUSION**

The Court will allow Plaintiff's retaliation claim to proceed against Defendant Jones in his individual capacity for damages. The Court will enter a separate Scheduling Order governing this continuing claim.

The Court will enter a separate Order dismissing all other claims.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005